1
2
3
4
5
6

# IN THE UNITED STATES DISTRICT COURT

7

## FOR THE DISTRICT OF ARIZONA

8
9

Kathleen Hoffard,

No. CV-20-00243-TUC-SHR

10

Plaintiff,

**Order re: Plaintiff's Motion for Preliminary Injunction and Expedited Hearing**

11

v.

12

County of Cochise, et al.,

13

Defendants.

14
15
16

Pending before the Court is Plaintiff Kathleen Hoffard's Motion for Preliminary

17

Injunction and Expedited Hearing ("Motion") (Doc. 14).[1]  On August 27, 2020, Plaintiff

18

filed her First Amended Complaint ("FAC") (Doc. 6) against Defendants Cochise County

19

and Cochise County Elections Director, Lisa Marra, alleging the lack of curbside voting

20

on Election Day in Cochise County discriminates against her on the basis of her disability

21

in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq*

22

("ADA"), the Rehabilitation Act of 1973, 29 U.S.C. §  794 ("Section 504"), and the

23

Arizona Civil Rights Act, A.R.S. § 41-1421(B) ("ACRA").  Plaintiff's FAC seeks both

24

declaratory and injunctive relief.  On October 5, Plaintiff filed the instant Motion,

25

requesting "a preliminary injunction enjoining Defendants from implementing their

26

blanket ban on curbside voting."  Defendants filed a timely response (Doc. 19) and Plaintiff

27

has replied (Doc. 21).  For the following reasons, the Court denies Plaintiff's Motion.

28

[1]Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) (Doc. 11) is also pending, which the Court will address in a separate order.

## I.      Background

The following facts are derived from Plaintiff's FAC (Doc. 6) and sworn declaration (Doc. 15, Hoffard Decl.).  Plaintiff is a registered voter in Cochise County, Arizona, who has physical disabilities which substantially limit everyday activities and is at a higher risk of severe illness from COVID-19 due to medication that suppresses her immune system.  Plaintiff participated in curbside voting in Cochise County before 2018 because her disabilities make it difficult and painful for her to exit her vehicle and navigate the parking lot and vote centers.

When Plaintiff went to a Cochise County vote center in November 2018, to vote in the mid-term election, a poll worker informed her curbside voting was not available.  Plaintiff then called the Cochise County Elections Department which told her curbside voting was not available at any vote centers in the county because all vote centers were compliant with the ADA.  Plaintiff then drove to a different vote center and, after again being told curbside voting was not available, she exited her vehicle, went into the vote center, which caused her great physical discomfort and pain, and cast her ballot.

Cochise County ("the County") has indicated on its website that curbside voting will not be available in the November 3, 2020 general election.  Specifically, the County website states:

> All vote centers in use in Cochise County are fully ADA compliant under Federal law.  As such, disabled voters are welcome into the polling locations to cast their vote and curbside voting isn't required.  Because there are no pre-printed paper ballots at our vote centers, all voters are required to vote on the electronic machines which are not able to be moved outside, or to the curb, due to the sensitive computer equipment inside the machines.[2]

COCHISE COUNTY, *Election FAQs*, https://www.cochise.az.gov/elections/elections-faqs (last visited: Oct. 22, 2020).

_____

[2]Plaintiff also alleges the County provided a substantially similar message in its Poll Worker's Training Handbook for 2020.  The link provided by Plaintiff, however, is non-functional and Plaintiff has not otherwise provided a copy of the handbook.

Plaintiff plans to vote in person in all future elections in Cochise County, including the November 3, 2020 general election, and argues she requires a "reasonable modification of curbside voting, or a substantially equivalent reasonable modification," especially because she faces a heightened risk of illness from COVD-19 due to her "immune function limitations."

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

## II.  Hearing on Preliminary Injunction

A hearing on a motion for a preliminary injunction may be necessary where facts are disputed.  *See Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 555 (9th Cir. 1986) ("Where sharply disputed the facts are simple and little time would be required for an evidentiary hearing, proceeding on affidavits alone might be inappropriate.").  Here, Plaintiff does not concede the vote centers are ADA-compliant, while Defendant has provided evidence they are ADA-compliant.  (Doc. 18, Marra Decl. pg. 2).  However, by Plaintiff's own argument, whether the County's vote centers are ADA-compliant is not material to her claim as she contends Defendants' compliance with ADA-accessibility guidelines "does not relieve" them of their "obligation to comply with other ADA regulations, such as reasonable modifications."  (Doc. 14, pg. 16-17).  In other words, Plaintiff argues even if the County's vote centers are accessible and ADA-compliant, the County must provide curbside voting as a reasonable modification.  Therefore, whether the vote centers are ADA-compliant is not material to Plaintiff's reasonable modifications argument.

Accordingly, the Court finds oral argument will not aid in resolution of the issue raised and denies Plaintiff's request for a hearing on her Motion.  *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument."); Fed. R. Civ. P. 78; *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) ("[A] district court can decide the issue without oral argument if the parties can submit their papers to the court."); *see also Bach v. Teton Cty. Idaho*, 207 F. App'x 766, 769 (9th Cir. 2006) ("Due process does not require the district court to hold oral argument before ruling on pending motions.")

### III.   Preliminary Injunction Standard

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (per curiam) (emphasis in original)).   "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Monarch Content Mgmt. LLC v. Ariz. Dep't of Gaming*, 971 F.3d 1021, 1027 (9th Cir. 2020) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).   The Ninth Circuit Court of Appeals, employing a sliding scale analysis, has also stated:   "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met."   *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1085 (9th Cir. 2013) (quoting *All. for the Wild Rockies*, 632 F.3d at 1132) (sliding-scale test "remains viable" after *Winter* and movants "must also satisfy the other *Winter* factors")).

A mandatory injunction, such as the one Plaintiff seeks, is one that "orders a responsible party to 'take action.'"   *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996). Such an injunction "'goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored.'"   *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (alterations in original) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)).   Generally, mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages."   *Id.*, 571 F.3d at 879 (quoting *Anderson*, 612 F.2d at 1115)).

### IV.   Discussion

#### A.  Likelihood of Prevailing on the Merits

Title II of the ADA provides:   "no qualified individual with a disability shall, by

- 4 -

reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  This is modeled after § 504 of the Rehabilitation Act, which states:  "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.  "Title II extends the anti-discrimination prohibition embodied in section 504 [of the Rehabilitation Act of 1973] to all actions of state and local government and should be read broadly in order to effectively implement the ADA's fundamental purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  *City of Los Angeles v. AECOM Servs., Inc.*, 854 F.3d 1149, 1153–54 (9th Cir. 2017) (internal citations and quotations omitted) (alteration in original).  Similarly, under the ACRA, "A qualified individual with a disability shall not be excluded from voting or be discriminated in voting under this section by reason of the disability."  A.R.S. § 41-1421(B).

To prove Defendants discriminated against Plaintiff, she must show:  "(1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability."  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).  "Qualified individual with a disability" means a person "with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2). The ADA defines "disability" as:  "(A) a physical or mental impairment that substantially

limits one or more major life activities[3] of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Here, Plaintiff alleges, and Defendants do not contest, she "has physical impairments that substantially limit the major life activities of walking, standing, immune system function and musculoskeletal function." (Doc. 6, ¶¶ 7, 35; Hoffard Decl. pg. 1-2; Doc. 19). The parties also do not dispute Plaintiff is a registered voter qualified to vote in Cochise County and participate in the County's election process. (Doc. 14 pg. 6; Doc. 19).

The likelihood of Plaintiff prevailing on the merits of her claims is low when considering the third and fourth elements. There is no dispute Plaintiff was denied the ability to vote curbside in 2018 or that she will again be unable to do so in the next election, as Defendants stopped offering curbside voting after the 2016 general election. (Doc. 6, ¶ 42, Doc. 19, ¶ 6) But the inquiry does not end there, as the issue is not simply whether Plaintiff will be denied curbside voting, but whether, in the absence of curbside voting as a reasonable modification, Plaintiff will be excluded from participating in the election on November 3. Plaintiff asserts she will be denied "equal access to the services, programs, and benefits of the voting process offered to others due to Defendants' categorical ban on providing curbside voting as a reasonable modification at any polling location in Cochise County." (Doc. 6, ¶¶ 41-42).

As Plaintiff notes, "voting is of the most fundamental significance under our constitutional structure." *Illinois State Bd. of Elections v. Socialist Workers Party*, 99 S. Ct. 983, 990 (1979). "It does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). Plaintiff cites no authority, and the Court is aware of none, that requires in-person voting to be available.[4]

---

[3] Under the ADA, "major life activities" includes, but is not limited to: "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A)

[4] Indeed, Washington, Oregon, Hawaii, Colorado, and Utah do not offer in-person voting on Election Day and instead conduct their elections by mail. *See* NATIONAL CONFERENCE OF STATE LEGISLATURES, *State Laws Governing Early Voting*, https://www.ncsl.org/research/elections-and-campaigns/early-voting-in-state-

First, although "[c]urbside voting *may* be made available as a reasonable accommodation as necessary to provide voters with disabilities equal access to the voting process," Arizona does not require counties to provide curbside voting.  Arizona Secretary of State Katie Hobbs, *2019 Elections Procedures Manual*, https://azsos.gov/sites/default/files/2019_ELECTIONS_PROCEDURES_MANUAL_APPROVED.pdf (last visited: Oct. 22, 2020) (emphasis added) (prescribing rules and procedures for 2020 elections); *see also* A.R.S. § 16-452 (Arizona Secretary of State's Elections Procedures Manual has full force of law).  Second, the provision allowing for curbside voting is under the "Alternative Voting Options" section of the 2019 Elections Procedures Manual ("EPM"), which reads:  "Alternative means of voting shall be used at polling places and vote centers determined by the officer in charge of elections to be inaccessible only when:  No accessible sites are available; and No temporary measures can make them accessible."  *2019 Elections Procedures Manual* at 105.  Third, if the officer in charge of elections determines there are no accessible sites in their county, then the EPM requires the county to offer at least one of the following alternative means of voting to voters with disabilities or seniors:  (1) "Where practicable, reassignment to an accessible voting location"; (2) "Assistance provided by a person of the voter's choice or two election officials of different political parties"; (3) early voting; or (4) "Curbside voting, if available at the voting location."  *Id.*  Notably, the EPM's list of alternative means of voting employs "or"—it does not use "and."  Therefore, by its own text, the EPM does not mandate curbside voting as a reasonable modification to Plaintiff or any other voter with a disability.

Here, the County Elections Director, Lisa Marra, as the officer in charge of elections, has not determined that no accessible sites are available—she has determined just the opposite**.**  (Marra Decl. pg. 2).  Plaintiff has provided no evidence to the contrary.  Even if Director Marra had determined there are no accessible vote centers available, the County would not be required to offer curbside voting and instead could offer any of the above alternatives.

elections.aspx (last visited: Oct. 21, 2020).

As to Plaintiff's argument that curbside voting is a reasonable modification, the Court is doubtful she will prevail.  To provide curbside voting, Plaintiff proposes the County either purchase special carts for the machines and bring them outside to the voter's vehicle or obtain ballot printers, print each voter's specific ballot using the "Ballot on Demand" system, and then bring the paper ballot to the voter's vehicle.  (Doc. 14 pg. 21). Defendants argue curbside voting would not only fundamentally alter the nature of its all-electronic voting system but would be infeasible.  (Doc. 19 pg. 22).

"A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."   28 C.F.R. § 35.130(b)(7).  "The question whether a particular accommodation is reasonable 'depends on the individual circumstances of each case' and 'requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards.'" *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002) (quoting *Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir.1999)). Plaintiff bears the initial burden of producing evidence that a reasonable modification is possible; thereafter, the burden shifts to Defendants to produce rebuttal evidence that the requested modification is not reasonable.  *Id.*

Plaintiff has produced evidence there are carts available for purchase that are designed for the ExpressVote machines used by the County, which can traverse all types of terrain and be easily maneuvered by a poll worker.  (Doc. 15, Daly-Rooney Decl., pg. 1-2; Doc. 21, Keene Decl. pg. 1-2).  Thus, Plaintiff has met her initial burden of showing curbside voting is possible in terms of transporting the machines outside.  Defendants have rebutted that evidence with their own sworn declaration establishing that even with the carts, the machines tend to tip over and pose a risk of injury to voters and poll workers, as well as damage to the machines and voter vehicles.  (Marra Decl. pg. 3-4)  Further, Defendants have produced evidence that transporting the machines outside it not the only logistical problem:  the County uses e-pollbooks to capture voters' signatures, which

cannot be taken outside without shutting down the entire system, thus requiring a restart that can take up to twenty minutes; the County does not have the internet capability or capacity to reliably and consistently produce ballots with Ballot on Demand; and, due to the wide variety of different ballot styles, it is impracticable for the County to store paper copies of each ballot at each vote center. (Marra Decl. pg. 2-3). Plaintiff has produced no evidence to the contrary, other than pointing to other counties in Arizona that provide paper ballots using Ballot on Demand printers for curbside voting. (Hilser Decl. pg. 1-3). Thus, Plaintiff has not made a clear showing she can establish curbside voting is a reasonable modification. *See Lopez*, 680 F.3d at 1072; *see also Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879.

For the foregoing reasons, the Court finds Plaintiff is unlikely to prevail on the merits of her claims.

## B.  Irreparable Harm

Plaintiff argues she will suffer irreparable harm if she and other voters with disabilities who face an increased risk of serious illness from COVID-19 "are denied access to curbside voting, or a substantially equivalent reasonable modification on Election Day." (Doc. 14 pg. 17). Specifically, Plaintiff asserts that if she is required to enter a vote center to cast her ballot on Election Day, she "will have to be in proximity to other voters and poll workers, increasing her risk of contracting COVID-19," in addition to experiencing significant pain related to walking, sitting, and standing. (Doc. 14 pg. 19). Defendants contend Plaintiff will suffer no harm because the County "has not denied her an opportunity to cast her vote" and she "has many opportunities to do so, starting from the early voting period, right up until Election Day." (Doc. 19 pg. 23).

The Court takes judicial notice of and is sympathetic to the increased risk Plaintiff and other individuals with certain underlying medical conditions face of severe illness from COVID-19.[5]  However, as Defendants point out, the County already offers a variety of

---

[5] *See* CENTERS FOR DISEASE CONTROL & PREVENTION, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited: Oct. 20, 2020).

alternative means of voting that reduce and, in some cases, nearly eliminate, contact with other people, thereby lowering the risk of exposure to COVID-19.[6]  Specifically, Plaintiff can vote by mail and avoid contact with other individuals entirely.  Plaintiff can obtain a mail-in ballot by either signing up for the Permanent Early Voting List ("PEVL")[7] or calling the County Recorder's Office to request a ballot by Friday, October 23, 2020 at 5:00 p.m.  Plaintiff can then return her ballot by:  (1) mailing it, which does not require postage; (2) dropping it off at any vote center on Election Day; or (3) dropping it off early at a secure ballot drop-box provided at one of five locations.  *See* COCHISE COUNTY, Elections, https://www.cochise.az.gov/elections/home (last visited: Oct. 21, 2020); COCHISE COUNTY, *Ballot Box Locations*, https://www.cochise.az.gov/recorder/ballot-box-locations (last visited: Oct. 21, 2020).

Based on the facts established in the parties' pleadings, Plaintiff has not clearly demonstrated she will suffer irreparable harm simply because she will not be offered the specific means of voting she desires.  *See Lopez*, 680 F.3d at 1072; *see also Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879.  Furthermore, Plaintiff fails to articulate why the other available methods of voting, including voting by mail, do not constitute substantially equivalent reasonable modifications.

### C.  Balance of Equities

To qualify for injunctive relief, Plaintiff must establish "the balance of equities tips in [her] favor."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).  In determining whether a movant has met this burden, courts have a "duty . . . to balance the interests of all parties and weigh the damages to each."  *Id.*

---

[6]*See* CENTERS FOR DISEASE CONTROL & PREVENTION, *Considerations for Election Polling Locations*, https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html (last visited: Oct. 20, 2020) (advising voters to "[c]onsider voting alternatives available in your jurisdiction that minimize contact," such as voting by mail);

[7]Voters can request to be added to the PEVL any time, but requests must be received by 5:00 p.m. on the eleventh day before the election, which, in this case, is Friday, October 23, 2020.  *See Ballot-by-Mail & Permanent Early Voting List Request Form*, https://www.cochise.az.gov/sites/default/files/elections/AZ_PEVL_form2020.pdf (last visited: Oct. 22, 2020).  Plaintiff has not explained why she has not taken advantage of this alternative means of voting, even though voting by mail would obviate her concerns related to exiting her vehicle and going inside to vote.  (Doc. 6; Hoffard Decl., Doc. 19).

(quoting *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980)).   The balance of equities between the parties tips in favor of Defendants.

At issue here is not simply Plaintiff's "strong interest in exercising the 'fundamental political right' to vote," *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (internal citation omitted), but rather her interest in voting curbside.   The Defendants' interest here is effectively running its voting system and administering the November 3 general election.   *Cf. Purcell*, 549 U.S. at 4 ("A State indisputably has a compelling interest in preserving the integrity of its election process.").   As explained above, the logistics of transporting the electronic voting machines and, in particular, the e-pollbooks which cannot be transported outside without shutting down the entire voting system, make curbside voting infeasible.   To provide curbside voting, the County would be required to purchase special carts for the transportation of the voting machines outside and possibly be required to pay for costly repairs to the machines, should they be damaged in the process.   The effective administration of the election would also be compromised when the entire system shuts down each time an e-pollbook must be taken outside for use by a curbside voter.   Or, as Plaintiff suggests, the County could provide paper ballots, which would require it to purchase Ballot on Demand printers and produce ballots for voters who wish to vote curbside.   (Doc. 6 pg. 16).   Logistically, these alterations to the election process would be infeasible—especially with less than two weeks remaining before Election Day.

Having considered the interests of the parties and weighing the damages to each, the Court finds the balance of equities tips in the Defendants' favor.

**D.  Public Interest**

In cases involving elections, "[t]he public interest is significantly affected."   *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003).   And in this case, there are competing public interests.   There is a strong public interest in the fundamental right to vote and to provide all voters, including those with disabilities, meaningful access to the election process.   These concerns regarding the public interest, are not what is at stake here.   Rather, the public interest advanced by Plaintiff is the ability

to vote curbside even if other reasonable accommodations exist.  On the contrary, the competing public interest of ensuring elections are effectively administered and avoiding confusion caused by changes to election rules and procedures close to Election Day cuts against issuing a preliminary injunction in this case.  Specifically, the Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (citing *Purcell*, 549 U.S. 1).  In *Purcell*, the Supreme Court explained that because court orders affecting elections can "result in voter confusion and consequent incentive to remain away from the polls.  As an election draws closer, that risk will increase."  549 U.S. at 4-5.  As of the date of this order, Election Day is twelve days away.

Most recently, on October 21, 2020, the Supreme Court granted a stay application in a case involving an ADA-challenge to Alabama's lack of curbside voting for voters with disabilities.  *Merrill v. People First of Alabama*, __ S.Ct. __, 2020 WL 6156545 (U.S. Oct. 21, 2020).  There, the district court enjoined the Alabama Secretary of State's "de facto ban on curbside voting," among other voting procedures, in part, due to the increased risks voters with disabilities face with COVID-19.  *People First of Alabama v. Merrill*, 2020 WL 5814455 at *2 (N.D. Ala. Sept. 30, 2020).  The Alabama case involved a statewide ban on curbside voting based on the Alabama Secretary of State's interpretation of state law.  Arizona does not ban curbside voting.  Indeed, Plaintiff has established that several counties in Arizona offer curbside voting.  (Doc. 21, Hilser Decl.).  Rather, the County has chosen not to offer it.  Moreover, in enjoining Alabama's ban on curbside voting, the district court specifically explained:  "To be clear, lifting the ban on curbside voting permits counties willing to implement the practice, if any, to do so, but this order does not mandate that counties must provide curbside voting in Alabama." *Id.*  The court emphasized the injunction was not a mandatory one, but rather a prohibitory one, as such the order "would not require the defendants to take any affirmative action, such as actually providing curbside voting." *Id.* at *41.  This is in stark contrast to the instant case where Plaintiff seeks a mandatory injunction that would require Defendants to take affirmative action by

- 12 -

providing curbside voting.  As noted above, mandatory injunctions are disfavored.  *See Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879.  Consistent with that, the Supreme Court's stay of the  negative injunction in the Alabama case is instructive to this Court and supports denying the mandatory injunction sought here.

### V.    Conclusion

Having considered Plaintiff's Motion, the Defendants' Response (Doc. 19), and Plaintiff's Reply (Doc. 21), and good cause appearing,

**IT IS ORDERED** Plaintiff's Motion for Preliminary Injunction and Expedited Hearing (Doc. 14) is **DENIED**.

Dated this 22nd day of October, 2020.

Honorable Scott H. Rash
United States District Judge