**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathleen Hoffard,<br><br>    Plaintiff,<br><br>v.<br><br>County of Cochise, et al.,<br><br>    Defendants. | No. CV-20-00243-TUC-SHR<br><br>**Order Re: Defendants' Motion to Dismiss** |

Pending before the Court is Defendants Cochise County and Cochise County Elections Department Director Lisa Marra's Motion to Dismiss (Doc. 11). On August 27, 2020, Plaintiff Kathleen Hoffard filed her First Amended Complaint ("FAC") (Doc. 6) against Defendants, alleging the lack of curbside voting on election day in Cochise County discriminates against her on the basis of her disability in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq* ("ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), and the Arizona Civil Rights Act, A.R.S. § 41-1421(B) ("ACRA"). Plaintiff seeks both declaratory and injunctive relief.[1] Defendants filed their Motion to Dismiss ("Motion") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]

---

[1] This Court previously denied Plaintiff's motion for preliminary injunction, in which she sought an order requiring Defendants to provide curbside voting for the November 3, 2020 general election. *See* Doc. 23.

[2] Although this Court could summarily strike Defendants' Motion for lack of "a certification that, before filing the motion, the movant notified the opposing party of the issues raised in the motion and the parties were unable to agree that the pleading was

## I. Background

The following facts are derived from Plaintiff's FAC. Plaintiff is a registered voter in Cochise County, Arizona, who has physical disabilities which substantially limit her everyday activities and is at a higher risk of severe illness from COVID-19 due to medication that suppresses her immune system. Plaintiff participated in curbside voting in Cochise County before 2018 because her disabilities make it difficult and painful for her to exit her vehicle and navigate parking lots and Vote Centers.

When Plaintiff went to a Cochise County Vote Center in November 2018 to vote in the mid-term election, a poll worker informed her curbside voting was not available. Plaintiff then called the Cochise County Elections Department, which told her curbside voting was not available at any Vote Center in the county because all Vote Centers were accessible and ADA-compliant. Plaintiff then drove to a different Vote Center, where she was again told curbside voting was not available. She then exited her vehicle, went into the Vote Center, which caused her great physical discomfort and pain, and cast her ballot.

Cochise County ("the County") announced curbside voting would not be available for the November 3, 2020 general election. Specifically, the County website stated:

> All Vote Centers in use in Cochise County are fully ADA compliant under Federal law. As such, disabled voters are welcome into the polling locations to cast their vote and curbside voting isn't required. Because there are no pre-printed paper ballots at our Vote Centers, all voters are required to vote on the electronic machines which are not able to be moved outside, or to the curb, due to the sensitive computer equipment inside the machines.[3]

---

curable in any part by a permissible amendment offered by the pleading party" pursuant to LRCiv 12.1(c), in the interest of judicial economy, the Court will consider the Motion on the merits.

[3] Plaintiff also alleges the County provided a substantially similar message in its Poll Worker's Training Handbook for 2020. The Handbook indeed states: "Curbside voting is allowed when a Vote Center is not ADA accessible. ALL 17 VOTE CENTERS IN COCHISE COUNTY ARE ADA ACCESSIBLE PER FEDERAL GUIDELINES. CURBSIDE VOTING IS NO LONGER OFFERED as an additional service." *Poll Worker's Training Handbook 2020 Election*, Cochise Cnty. Elections Dep't, https://www.cochise.az.gov/DocumentCenter/View/586/Poll-Worker-Handbook-PDF (last visited: June 24, 2021).

COCHISE COUNTY, *Election FAQs*, https://www.cochise.az.gov/elections/elections-faqs (last visited: Oct. 22, 2020).

Plaintiff plans to vote in person in all future elections in Cochise County and argues the lack of curbside voting constitutes discrimination on the basis of her disabilities in violation of the ADA, Section 504, and the ACRA. (Doc. 6 pp. 6-12.) Plaintiff requests the Court: (1) issue a declaratory judgment finding the Defendants' policies, practices, and procedures constitute unlawful discrimination; (2) order Defendants to provide curbside voting as a reasonable modification; (3) order Defendants "to provide remedial and additional training to County Election[s] Department staff and poll workers on the rights of individuals with disabilit[ies]"; and (4) order Defendants "to implement an effective remedial plan to provide notice to qualified electors that the unlawful blanket ban of curbside voting has been lifted and that curbside voting, or a substantially equivalent reasonable modification, is available . . . ." (Doc. 6 p. 14.)

Defendants filed their Motion pursuant to Rule 12(b)(6) (Doc. 11). Plaintiff responded (Doc. 12) and requested the opportunity "to fully brief the genuine issues of material fact" if the Court converts the Motion to a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In their reply (Doc. 17), Defendants requested the Court consider additional facts if it converts the Motion to a motion for summary judgment. The Court later ordered "additional briefing addressing: (1) whether the Court should convert the Motion to Dismiss to a motion for summary judgment; and (2) any genuine issues of material fact." (Doc. 24.) The parties submitted briefing in response to the Court's order. (Docs. 25, 26, 28, 30.)

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

## II. Motion to Dismiss and Motion for Summary Judgment Standards

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." While Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under Rule 12(b)(6), a party

may move to dismiss a claim for relief by asserting "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint, however, must contain more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly,* 550 U.S. at 555 (quoting 5 Fed. Prac. & Proc. Civ. § 1216 (3d ed.)).

The Court will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, the Court will not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see also Iqbal*, 556 U.S. at 679. In addition, a court "cannot assume any facts necessary to [a plaintiff's] . . . claim that they have not alleged." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

As a general rule, when deciding a Rule 12(b)(6) motion, courts may not consider any material beyond the pleadings. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir.2001). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (if court considers evidence outside pleading, it must convert Rule 12(b)(6) motion to Rule 56 motion).

Under Rule 56, upon a party's motion, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat summary judgment. *Id.* at 252. However, in evaluating a motion for summary judgment, the evidence of the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Although Defendants do not specifically cite to matters outside their Motion, Defendants make a variety of factual assertions outside the pleadings, which appear to be supported by the briefing and supporting affidavits submitted in relation to Plaintiff's motion for preliminary injunction. Therefore, the Court ordered supplemental briefing as to whether the Court should consider such matters and convert the Motion to a motion for summary judgment. (Doc. 24.) Having reviewed the Parties' submissions in response to the Court's order for supplemental briefing (Docs. 25, 26, 27, 28) and pertinent authority, and in light of the limited record at this stage of litigation, the Court declines to convert Defendants' Motion to a motion for summary judgment. Accordingly, the issue before the Court is whether Plaintiff's FAC contains sufficient factual matter to state a facially plausible claim for relief. *See Iqbal*, 556 U.S. at 678.

### III. ADA, Section 504, and ACRA

Congress first passed the Rehabilitation Act, which states in Section 504: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his

disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Congress later enacted the ADA to further protect the rights of individuals with disabilities by "provid[ing] clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). Title II of the ADA is the portion applicable to state and local governments, which provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In other words, "Title II extends the anti-discrimination prohibition embodied in section 504 [of the Rehabilitation Act of 1973] to all actions of state and local government and should be read broadly in order to effectively implement the ADA's fundamental purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *City of L.A. v. AECOM Servs., Inc.*, 854 F.3d 1149, 1153–54 (9th Cir. 2017) (internal citations and quotations omitted) (alteration in original). Further, "Title II emphasizes 'program access,' meaning that a public entity's programs and services, viewed in their entirety, must be equally accessible to disabled persons." *Cohen v. Culver City*, 754 F.3d 690, 694–95 (9th Cir. 2014). Similarly, Arizona enacted the ACRA, which provides, in relevant part: "A qualified individual with a disability shall not be excluded from voting or be discriminated in voting under this section by reason of the disability." A.R.S. § 41-1421(B).

The regulations implementing Title II of the ADA further detail the responsibilities of public entities. For example, 28 C.F.R. § 35.149 provides, "[e]xcept as otherwise provided in § 35.150, no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." And § 35.150(a) provides:

> A public entity shall operate each service, program, or activity

> so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. This paragraph does not—
>
> (1) Necessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities;
>
> (2) Require a public entity to take any action that would threaten or destroy the historic significance of an historic property; or
>
> (3) Require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens. . . .

Further, "[a] public entity shall make reasonable modifications in policies, practices, or procedures *when the modifications are necessary to avoid discrimination on the basis of disability*, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(7)(i) (emphasis added).

"To prevail under Title II, the plaintiff must show that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of his disability." *Cohen*, 754 F.3d at 695; *see also* 42 U.S.C. § 12132; *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). And, failure to make reasonable modifications in policies, practices, or procedures may constitute discrimination under the ADA. *See* 42 U.S.C. § 12182(b)(2)(A)(ii) (discrimination includes failure to make reasonable modifications when necessary); *Alexander v. Choate*, 469 U.S. 287, 301 (1985) ("to assure meaningful access [to individuals with disabilities], reasonable accommodations in the grantee's program or benefit may have to be made"). Because the elements of Plaintiff's ADA, Section 504, and ACRA claims do not differ in any respect

relevant to the resolution of this Motion and are given the same analysis, the Court will address these claims together. *See Duvall v. Kitsap Cnty.*, 260 F.3d 1124, 1135–36 (9th Cir. 2001); *see also* A.R.S. § 41-1421(D) ("Compliance with title II of the Americans with disabilities act (42 United States Code §§ 12131 through 12134) and its implementing regulations and the voter accessibility for the elderly and the handicapped act (42 United States Code §§ 1977ee through 1977ee-6) is deemed in compliance with this article.").

## IV. Discussion

The Court accepts as true Plaintiff's allegations regarding her significant mobility issues and health conditions which make walking and standing difficult. *See Manzarek*, 519 F.3d at 1031. Defendants do not contest Plaintiff is a "qualified individual with a disability" under 42 U.S.C. §§ 12131(2) and 12102(1), or Plaintiff is a registered voter qualified to vote in Cochise County. (Doc. 6, ¶¶ 3, 6-7, 9, 35; Doc. 11.) Therefore, Plaintiff has sufficiently pled the first element of her claims and the Court considers only whether Plaintiff's pleadings sufficiently allege facts that, accepted as true, plausibly state she was excluded from or denied the benefit of Cochise County's voting services, programs, or activities, or was otherwise discriminated against and, if so, whether such exclusion, denial, or discrimination was on the basis of disability. *See Cohen*, 754 F.3d at 695; *see also* 42 U.S.C. § 12132.

In Count One of her FAC, Plaintiff alleges Defendants "discriminated and continue to discriminate against [her] on the basis of her disabilities by denying her equal access to the services, programs, and benefits of the voting process offered to others due to Defendants' categorical ban on providing curbside voting as a reasonable modification at any polling location in Cochise County." (Doc. 6 at 10.) In Count Two, she alleges: "Defendants have discriminated and continue to discriminate against Plaintiff and similarly-situated individuals on the basis of their disabilities by denying them equal access to the services, programs, and benefits of the voting process offered to others due to Defendants' blanket ban on providing curbside voting at any polling location in Cochise County, thus precluding it as a reasonable modification." (Doc. 6 at 12.) Plaintiff has not alleged she was denied access to a Vote Center. Rather, she alleges she was denied equal

access because of the lack of curbside voting and explains her claim is "based on the reasonable modification provisions of the ADA, Section 504, and ACRA, not on the ADA accessibility requirements" (Doc. 12 at 5). As to reasonable modifications, the law specifically states: "A public entity shall make reasonable modifications . . . *when the modifications are necessary to avoid discrimination* on the basis of disability." 28 C.F.R. § 35.130(7)(i) (emphasis added); *see also* 42 U.S.C. § 12182(b)(2)(A)(ii) ("[D]iscrimination includes . . . a failure to make reasonable modifications in policies, practices, or procedures, *when such modifications are necessary* to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities . . . ." (emphasis added)). Thus, the reasonable modification requirement does not apply unless and until there is discrimination on the basis of disability. Therefore, the Court must first consider whether Plaintiff has sufficiently alleged she was discriminated against on the basis of her disability.

In their Motion, Defendants argue Plaintiff had "full and equal access to voting" because the County offered a variety of alternatives to in-person voting, including requesting a ballot be mailed to her by either calling the Cochise County Recorder's Office at least twelve days before the election or by joining the Permanent Early Voter List and then returning the ballot by mail or by dropping it off in a secure drop-box inside the County service centers, or voting early in person at the Recorder's Office in Bisbee starting twenty-seven days before the election. (Doc. 11, p. 6.) Defendants also assert the County's Vote Centers open for in-person voting on election day are accessible and ADA-compliant. (Doc. 11 pp. 3-5, 8.) Thus, Defendants argue the above alternatives to in-person voting and the availability of accessible and ADA-compliant voting centers provide "meaningful access" and the County "is not required to make special accommodations for Plaintiff by offering her curbside voting." (Doc. 11 p. 8.)

Plaintiff counters the "availability of mail-in or early voting for all voters is not a reasonable modification for meaningful access to *in-person* voting." (Doc. 12 p. 4 (emphasis in original).) Plaintiff does not concede all of the Vote Centers are accessible and ADA-compliant, but she nonetheless argues, "accessible Vote Centers do not equate

with full compliance under the ADA, § 504, and ACRA,"[4] because her claim is based on the reasonable modification provisions of those laws—not the accessibility requirements. (Doc. 12 p. 5.) In other words, Plaintiff argues even if all the Vote Centers are accessible and ADA-compliant, compliance with accessibility standards "does not relieve a public entity of its obligation to comply" with the reasonable modification requirement. (Doc. 12 pp. 5-6.) Therefore, Plaintiff contends, she has stated a viable claim because federal and state law require reasonable modifications to be provided when necessary to avoid discrimination.

At this stage of litigation, the Court construes Plaintiff's FAC in the light most favorable to her and accepts her factual allegations as true. *See Manzarek*, 519 F.3d at 1031. The Court concludes she has sufficiently alleged facts which, accepted as true, state a claim upon which relief may be granted. *See* Rule 8(a)(2); *Iqbal*, 556 U.S. at 678; *Manzarek*, 519 F.3d at 1031. The Court does note Plaintiff cites no authority, and the Court is aware of none, requiring public entities to offer in-person voting when other ADA-compliant options are available. Plaintiff's claims appear to argue the absence of curbside voting places an undue burden on her ability to vote in person and, at this stage, it is unclear to the Court how an undue burden could constitute an ADA, Section 504, or ACRA violation. Furthermore, even if the right to vote in person on election day does exist (as opposed to voting by mail, for example), it is unclear whether the lack of curbside voting constitutes a denial of that right if other accessible and ADA-compliant voting options are available. Regardless of the Court's concerns in this regard, at this state of the proceedings, Defendants' Motion is denied and Defendants must answer Plaintiff's FAC (Doc. 6) within fourteen days after notice of this Court's Order. *See* Fed. R. Civ. P. 12(a)(4)(A).

Accordingly,

. . . .

. . . .

---

[4] As Plaintiff points out, the ADA Checklist for Polling Places "has no legally binding effect." (*Id.* pp. 4-6 (quoting *U.S. Department of Justice Civil Rights Division*, ADA Checklist for Polling Places, https://www.ada.gov/votingchecklist.htm#toc1 (last visited: June 23, 2021).)

**IT IS ORDERED** Defendants' Motion to Dismiss (Doc. 11) is denied without prejudice.

**IT IS FURTHER ORDERED** Defendants shall file their answer to Plaintiff's First Amended Complaint (Doc. 6) **on or before Tuesday, July 13, 2021.**

Dated this 29th day of June, 2021.

*[signature]*
Honorable Scott H. Rash
United States District Judge